The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oh yay, oh yay, oh yay. All persons have any manner or form of business before the Honorable, the United States Court of Appeals, are admonished to draw now and give their attention. For the Court is now sitting. Godspeed to the United States and this Honorable Court. Mr. Birch, whenever you're ready, we'd be pleased to hear from you. Thank you. Good morning, Your Honors. John Birch on behalf of Robert Kerr. I have reserved five minutes for a moment to please the Court. With full appreciation for the challenge we face in asking this panel to change its mind from the preliminary injunction appeal, I will press two points this morning. First, the law of the case does not prevent this panel from correcting a mistake in its earlier decision. And second, as the en banc Fifth Circuit explained in Kaufman, the previous opinion here is demonstrably incorrect. 42 U.S.C. 1396 AA23A does not create a private right and Planned Parenthood is using its client to forum shop. I'll begin with the law of the case. The law of the case applies when the same panel decides a later appeal in the same case, whereas the law of the circuit applies when a different panel decides a later appeal in a The law of the case does not constrain this Court's authority. It's a discretionary rule intended to promote judicial efficiency. And as this Court made clear in the Sedgman decision, a judicially created procedural doctrine cannot defeat the intent of Congress. And as the Fifth Circuit made clear in Hopwood, nor can a judicially created doctrine defeat a binding U.S. Supreme Court. Let me understand where you're going with this. You're saying we were just manifestly wrong. We ought to reverse ourselves and do it correctly. That's basically what you're asking us to do. You did ask the Supreme Court for a cert on that issue, and it seems like the Supreme Court didn't see it was so wrong enough to grant a cert on it. That doesn't necessarily decide it one way or the other. But I don't think I've seen a case like this in which a panel has published an opinion. And it's one thing to not publish opinion with the law of the case, but a published opinion has become precedent for the other panels. So essentially you're saying everybody else has been bound by it except this panel. Is that right? But yes, that is right. And Judge Wynn, let me first address your point about the Supreme Court. Let me make sure. Let's work that a little bit where you're going with that. Every other judge other than this panel, if a panel is formed, or if we were another panel that's not constituted as it is, is bound by what we did and has been bound except this special panel that is now hearing something we published. I don't follow that. I'm trying to understand how that works because if that's true, then any time this panel is constituted, if that issue were to be brought back to this panel, even though it's not the same case, this panel could overrule itself. And that's not how it works. We don't write opinions for our panel. We write it for the court. So I just don't... Has this been done before? But Judge Wynn, our position is not that if this panel would write a decision in one case, it would not bind the same panel in a different case. Our position is that the law of the case applies. The problem, Mr. Birch, is that our previous decision was handed down as a matter of law. And as a matter of law, whether it's a law of the case or the law of the circuit, we don't even have to get into whether it's a law of the case because it's circuit precedent. And we don't have the authority to overrule circuit precedent. It's a binding opinion, which was written as a matter of law. And you say, well, something's changed. And then what you have said has changed is a decision from the Fifth Circuit. Well, you're entitled to agree with the decision of the Fifth Circuit. But as I understand circuit precedent, if every time another circuit comes to a decision at odds with this circuit, we are obliged to change our own precedent and follow the other circuit that disagrees with us. What in the world does that do to the circuit precedent of this circuit? If any other circuit can overrule this circuit's precedent, which is what you're urging. Well, our position is a little more. That was the change circumstance when we wanted to know what was different from this case and the prior case. Judge Wilkinson? Well, there's the Fifth Circuit and bank decision. But that can't be the way circuit precedent works. Judge Wilkinson, our position is a little more nuanced than that. No, really it isn't. Your Honor, first, there's a difference between circuit precedent and law of the case. Law of the case applies when you have the same panel in a later appeal of the same case. And Planned Parenthood concedes this on page 20, note 5, footnote 5 of their brief. They agree that this court has applied a holding from an earlier appeal in the same case. It cites the law of the case doctrine, not the law of the circuit doctrine. And the reason why the Fifth Circuit's decision in Kaufman is so important is not just because it said this court was demonstrably wrong or erroneous, but because it undercut the reasoning that this court used to distinguish the binding O'Bannon case. O'Bannon is on all courts. You're just trying to re-argue what you argued the last time. Your Honor, 11 to 5, the Fifth Circuit en banc said that the reasoning in the previous opinion with respect to Kaufman was demonstrably erroneous. And let me just briefly comment on that. I don't care what they said. We have a circuit precedent that is binding as a matter of law. You had a chance to take it up to the Supreme Court. They denied certiorari. And your view of circuit precedent is that we are obliged to change our precedent any time another court says our precedent is incorrect, which happens rather frequently, by the way. Not just with our circuit, but with all circuits. And you do understand that we as the Fourth Circuit, we can write such an opinion, too, about the Fifth Circuit. There's no difference there. We can say they are demonstrably wrong. The one that decides that would be the Supreme Court. They've decided. They've already denied its certainness. They may grant certain, you know, because of the split or down the road. But at this point, if you want relief, I would think you've got to seek some type of en banc relief. You can't come back to the same panel. Generally, when you're dealing with a law of the case, we're talking about the law that was made in a particular case. And then when this issue is decided, that same panel follows it as the law of the case. Unless it's overruled by a sitting en banc case or by the Supreme Court. It doesn't work the other way around. You can flip back and forth as though you're in reconsideration in district court. There's precedent here on this level. So I don't know. Maybe you want to continue to press this. I think your remedy, if you want to seek beyond here, is outside this panel. Well, and if this panel thinks that the first opinion is correct, then that's exactly what you should do. You should issue the same opinion. And we do have the right to take it to the Supreme Court. A point that I want to make about the previous trip to the Supreme Court. You have a right to ask the Supreme Court to consider it, which you did before. You might be more successful this time around on it. But at this point, what I'm saying is the argument you're making now, maybe simply to preserve it or to have it there. But I think that ship sailed before this panel and now before the court. Precedent, we don't. I just don't know of a case where the same panel comes back. Everybody else, what offends me the most about at least my notions of what ought to be right. I can't believe my colleagues are going to be bound by something I'm not. I think if it's precedent, it just binds everyone. All right. Judge Wynn and Judge Wilkinson, you both brought up the Supreme Court cert denial. And so I'd like a chance to address that. And then I'll go back to a lot of the case. I don't know why that's necessary, because that's, you know, we're talking about the Supreme Court can do what it wants to do at this point. That's right. That's before us. But I mean, you can articulate it, but it still doesn't get you into relief before this panel. It might get you a chance to talk a little bit about what the policy and everything else. But you are here to try to get some relief before this panel. And I think that's where you should focus your consideration. Very briefly, when we filed the cert petition the first time, it was from the preliminary injunction appeal. The district court then entered a final judgment, which rendered the interlocutory preliminary injunction appeal moot. That's the reasoning that Planned Parenthood articulated to the Supreme Court as to why it should deny cert. And that's presumably the reason why it accepted it. The Supreme Court's denial of cert doesn't have any bearing. Excuse me, Counselor, Judge Richardson had a question. So I have, I think, a sort of more sort of basic question, perhaps. So I assume that I agree with you that law of the case applies. Yes. And we can talk about what law of the case means and whether there's an exception that applies here or not. The question that I've got, and I accept that. But why, can you can you help me understand why law of the circuit does not also apply? Right. So why is it that because we fall within law of the case, that that is an exception or an inapplicability of the law of the circuit? Right. Why wouldn't we say that both apply just as a matter of law? I'm not talking about what's a good idea or anything else. But when you look at our law of the circuit. Why does the application of the law of the case mean that law of the circuit is no longer applicable? Because this court has made clear that the law of the circuit applies when you have a different panel in a different case. And there's practical reasons for that. We don't want. So give me so. So tell me, in in what case have we made clear that the law of the circuit is limited to different panel, different case? LJ versus Wilbin and U.S. Department of House and Urban Development versus Cost Control, Marketing and Sales Management. Those are both cited on page 10 of our reply brief. They're also referenced on page 20, footnote five of Planned Parenthood's brief. And there's a practical reason for that, Judge Richardson, in that if you have a different panel in a different case, we don't want them calling balls and strikes, saying that a previous decision was erroneous without going to the en banc court. Another panel cannot overrule a first panel. But when you're talking about the same panel in the same case, the law of the circuit is inapplicable because this panel is in the position to fix it. I just. Oh, excuse me, Judge. If I can just follow, I just want to make sure I understand the framework. And so is your view that that applies whether the law of the case is a factual determination type or mixed question at a preliminary injunction stage or a legal question at the preliminary injunction stage, that whichever that is, it matters not. We only apply law of the case when we're back on a permanent injunction appeal. Correct. The law of the case would apply to the facts or the law. If there was a change in facts, obviously, that's a strong reason to reconsider and then change a mistake in a previous opinion. But this court is clear, too, that if it makes a mistake, it has the ability to correct that mistake. And there are three contexts where that's true. In Sedgman, it said if it's the previous opinion is contrary to what Congress intended. And that's that's under law of the case. Second, Hopwood, the Fifth Circuit decision says when this. But I don't think you're responding to Judge Richardson's point. And that is even if law of the case doesn't doesn't apply, why does that affect what the law of the circuit is? And the previous opinion was rendered with respect to a question of law. And the question of law has not changed. It's the same that it was. And so it really is circuit precedent. And yet your view is that circuit precedent may be controlling, except it's not controlling in cases where the circuit precedent was rendered. And maybe that's, you know, the forces behind precedent and circuit precedent are to afford a degree of stability to circuit law upon which litigants may rely. And that rationale holds true whether it's the same panel or a different panel. Litigants need clear signals and following precedent lends the law stability and sends litigants that clear signal. And what you're proposing is highly destabilizing, which is that everything is sort of up for grabs by some ingeniously contrived exception. And I don't see what I don't see that this case differs in any material respect from the previous opinion and except that another circuit has disagreed with us. Fine, that's their prerogative. But our prerogative is to follow and more than our prerogative, it's our duty to follow our own case law and our own precedent. Judge Wilkinson, when we're talking about law of the case, we're talking about the narrow situation in the same case. It may or may not be. And we can, you know, we can have an angel dance on all ahead of the pen debate over that. But the point is that there is a circuit case out there which is binding precedent and litigants are entitled to rely upon that. If there had been a change of any kind of change of circumstance, that's one thing. The only thing that you pointed to is the Fifth Circuit. And you find a point to the Fifth Circuit and when you take a certiorari petition and you can point to a circuit split and fine, the Supreme Court will decide that. But we don't have the authority to simply toss it overboard. Judge Wilkinson, I see I'm out of time. Can I briefly respond to that? Yes, you may. This isn't my rule. This is the Fourth Circuit's rule. In Capital Investors, this court said courts have inherent power to correct earlier error if it becomes apparent. In American Canoe, this court said this court's responsibility is to get the law right, even if it was wrongly stated before. In Sedgman, this court said that if we issue an opinion that's contrary to congressional intent, a subsequent panel can fix that error. All I'm saying is, if there's an error, this panel has the power. Let me ask you this question. You think this panel doesn't know what circuit law is here in terms of how we handle cases? I mean, you have three judges here and we've articulated to you what it is. And you're telling us what it is in our circuit. It is very clear, and it's been set in an en banc case, that if you have a published opinion, that's what Judge Richardson is referring to, circuit precedent. If it's circuit precedent, then it's precedent. And if it's in direct conflict with any issue, the earliest opinion controls on that. That's the precedent here. And you are telling us what this circuit's law is. This is the most incredible argument I think I've heard in a long time. You keep telling Judge Wilkerson what the law is in this circuit. And I know Judge Wilkerson has been on this court for over 30 years. I've been here for a bit, and I'm trying to figure out where are you getting this from? And you keep saying the same thing over and over again, and you're not listening to what is being said. So I think it's very clear. I mean, if you want relief, I'm not saying you can't get it. I don't think you can get it this panel. We have en banc, you have the Supreme Court, the other avenues. The Fifth Circuit is not the way to go. There are other circuits too. They can use as strong a language as they want in terms of how they feel about our opinions. But nonetheless, we can too. We just won't because we tend to be a much more courteous circuit, I think, than others in terms of doing that. We're just not going to do that. But that's just the way it is. Precedent is precedent. Judge Wynn, I'm not trying to tell this honorable panel, this distinguished panel, what the law of the Fourth Circuit is. All I'm saying is what you just discussed in that en banc opinion is circuit precedent. It's not law of the case. LG v. U.S. Department of Housing and Urban Development. It makes no difference. If it's circuit precedent, it's circuit precedent. And you've just essentially conceded the point. We're trying to get out of the law of the case. You put yourself in the bucket of circuit precedent. At any rate, sir, you've got five minutes for rebuttal and we'll be happy to hear from you in rebuttal. And in the meantime, we'd like to hear from Ms. Schaharsky. Thank you, Judge Wilkinson. Good morning, Your Honors. I'm Nicole Schaharsky. I represent the appellees. I think the bottom line here is that the state is trying to relitigate a statutory interpretation question that this court already decided. It's finding circuit precedent, law of the case, and it's persuasive and well-reasoned. There's not any reason to revisit it here. And I guess I'd just like to address a couple of points that have come up so far in the court's questions. First of all, Judge Wynn's question, is there any other case like this where there was a binding circuit precedent and then a panel revisited it? I think the answer is no. If you look at the cases that are cited in the briefs, there's not another case like this. We found four cases, one unpublished in the Fourth Circuit, where the court actually came back and said it wasn't found by law of the case. And in those cases, something had changed. There was either they didn't decide the issue, there were new facts, something like that, and perhaps there wasn't a published decision the first time around. So it really would be unprecedented what the state is asking for here. And the Sedgman decision- Counsel, can I follow up on that? I mean, so I want to go back to this idea and, you know, law of the case and there are exceptions that exist there. But when we fall within law of the case, I maybe don't find it as unbelievable as some that the law of the circuit might not apply. And in part because I go back and I read the en banc decision that my colleague referred to earlier, and it talks about the law of the circuit means that the panel's decision is binding on a subsequent panel. And I read that to suggest the subsequent panel means like not in the same case, right? For the same reason that we could grant rehearing, panel rehearing, that as long as we're in the same case, that the law of the circuit doesn't bind us. And sort of there are these cases that find that law of the case doesn't apply, which would mean that they've also at least implicitly found that law of the circuit doesn't apply. And so I'm having a little bit of trouble understanding what's the what's the real rationale for applying law of the circuit when we have law of the case? And this is maybe a totally academic question because, you know, I think you can hypothesize here that you're going to win either way on this issue. The only rub is which is the right doctrine to think about? Right. So in terms of this court's precedent, there are multiple cases where this court has applied both circuit precedent and law of the case in circumstances like this one. And I would point the court to those cases because I don't think that there's any case to the contrary anywhere in the state's filings. The Tatum case, which is an ERISA case about an ERISA legal issue is one of them. There's the Columbus America case, which is about an abandoned ship. All right. So I get Tatum, but I'm not sure that it's it's like that's just dicta there, I think. But OK, what's the next one? Give me the next one. I'm not sure. Well, respectfully, I don't think Tatum is dicta. It goes through both law of the case and law of the circuit. And I suppose you're right that the court could have rested on either ground because either one of them would be dispositive as we think either one would be dispositive here. But the court did opine on both of them. There's also the Columbus America case, which is about an abandoned shipwreck. There's also that housing and urban development, U.S. housing and urban development case, which was a case on preliminary injunction that addressed whether some defendants were developers within the meaning of a certain federal law that required disclosures. That issue was decided on preliminary injunction. And then when the case went back to the court, the court said it's binding circuit precedent and law of the case. And the only set the only case that the state cites for the proposition that circuit precedent would not apply is a decision from the D.C. Circuit in a case called Lashon A. versus Ferry. And in that case, too, the court suggests that both law of the circuit and law of the case applies, although frankly, it says it doesn't really need to get into the interplay between the two because the law of the case doctrine would be dispositive. So I just don't think that there's any precedent for what the state is suggesting here. I agree with you that it's an interesting question. I think the better view on that question is that circuit precedent does apply because of the stability and predictability interests that Judge Wilkinson suggested. And also, as this court has said, the interest in the evenhanded application of circuit law, the idea that the circuit would issue a precedent and it would be binding on everyone except the state and that the state could take it to the Supreme Court and say that it was a binding decision and that they wanted review of it. That just doesn't seem to be consistent with both the circuit precedent and law of the case principles that are underlying this court's decision. Can I ask a slightly different question and then I'll obviously yield to my colleague. Can you talk to me a little bit about whether we want to call it standing or mootness? It seems we've got a little bit of a situation where the court, the district court, and frankly, this panel accepted the client's representation in July of 2018 that she had a present and imminent intention to return to Planned Parenthood, having just been there in July of 18. And at least at the August of 18, she was able to do so. And then for what appears to be more than two years before COVID kicks in, she doesn't go to Planned Parenthood at all. And then COVID kicks in and maybe that provides some excuse, but then COVID goes on for quite some time. And in March of 2021, they raise mootness as a concern. And then only in July of 2021 does she say, oh, OK, now three years later, I still have this intention to go do this. And you should believe me, because even though I didn't act on that intention in the last three years, I'm really going to do it now. How do we square that with this idea in cases like Lujan and our cases applying it that someday intentions aren't sufficient without concrete plans? Why do we think looking back at this now with the benefit of the information that we've got say that we all, including this court, did not look hard enough at that initial allegation of intention. And it turns out we now know based on her actions that she did not have a concrete plan to go back to Planned Parenthood. And that, in fact, all she did was indicate someday intentions to get around to maybe sometime when she felt like it going to Planned Parenthood. And that's just not enough under Lujan. Can you respond to help me understand why I should read it any other way? Sure. I think as the court recognized last time around, Ms. Edwards' need for contraception, long-acting contraception, is not a someday intention in light of her significant underlying conditions that would make a pregnancy potentially deadly to her. And that's something that was in the original declaration that she filed and that this court discussed the last time around, that she has a number of underlying conditions and acute medical needs that resulted in an acute need for this contraception. And that's why she went to Planned Parenthood in the first place. The state hasn't provided any evidence to suggest that anything has changed. But in order to put the matter to rest, we submitted a declaration from Ms. Edwards that indicates that she intends to continue receiving medical care from Planned Parenthood. There's no question that that medical care related to that contraception is covered by Medicaid. She also explained why she hasn't gone to as many medical appointments during the pandemic because of her underlying... No, but she doesn't explain at all what she did from August of 2018 until March of 2020. I mean, once COVID hit, I didn't want to go to the doctor. But she alleges, it turns out, we now know falsely, whether she knew it was false at the time is a different question, but that she was going to go to Planned Parenthood for annual wellness checkups. So she was there in July of 2018. July of 2019 comes around, she doesn't go. December of 2019 comes around, she doesn't go. January of 2020 comes around, she doesn't go. Maybe we say in February of 2020 or March of 2020, the pandemic hits, right? But she didn't go in the almost two years where she said she was going to be... I mean, she alleged she's going to do annual wellness checks. And we now know that that is false. She also explained in her declaration the last time around that she has... I mean, do you agree it's false? I mean, maybe start with that. Do you agree that it is false? When she said, I have an intention to get an annual wellness check, that that statement and the complaint was false? No, because it stated her intention at the time. And I think that that intention changed with the pandemic and the other circumstances of her life. I think in the declaration that she originally submitted, she explained that she has a number of medical conditions that means that she has a lot of doctors that she sees on a regular basis and that sometimes she needs to triage them. I think the thing that we're talking about... She hasn't been to any doctors. I mean, her claim is she doesn't go to any doctors now. I mean, this strikes me as precisely the sort of someday I intend to do something that Lujan tells us doesn't work. I think it's substantially different from Lujan because the need for medical care is something that can safely be assumed and understood that a person has in their life, particularly when they have significant underlying conditions like the court addressed last time around that Ms. Edwards has. We cited, for example, the Harris decision from the Ninth Circuit, which states that common sense proposition that people need medical care in their lifetimes. And the declaration that Ms. Edwards submitted indicates her continuing plan to seek that care from Planned Parenthood. And I guess I would say that the state hasn't done anything to question the veracity of those declarations. It never has. And so it hasn't come to this court with any kind of evidence, sworn declarations, nothing. It's just a suggestion in the reply brief that it couldn't raise any time. So we don't think that there's a mootness question here. If Your Honor does, we would respectfully submit that the right thing to do, if you thought there was a serious question, would be to return this case to the district court for fact-finding. This court doesn't normally find facts like this in the first instance, especially when there's no factual submissions from the state. So I appreciate your questions. And I appreciate the court's probing of this issue and to make sure that there is still a live dispute. But, you know, this is nothing like, you know, I hope to visit a national park in the future. This is a person who has had a hard time receiving medical care. And the panel recognized that last time around, that Medicaid patients are some of the most vulnerable folks and that there are a lot of providers, particularly in the state, that are not willing to treat them. And that when she found a care that she needed, and the state said that it was going to cut off that care, that that was truly an acute injury for her. And so to suggest that that's not an injury that could be remedied by this court's decision, I just, I don't think respectfully that that's correct. Let me ask you this. After 2018, did she see any other medical care providers? I don't know that the declaration speaks to that exact question. I think she talked about what happened during the COVID pandemic and the fact that she said she significantly scaled back her visits to doctors. She said that she did have visits to specialists who had treated her type one diabetes and related complications. So I think the supplemental declaration clearly does suggest that she had medical providers that she needed to see during that time. But she also indicated that she was trying to manage her need to receive care with some of the risks that she faced because of the pandemic. Well, I mean, of course, there are many instances where someone doesn't just, I don't know that there's any instance that she saw other medical providers, but even if she did, all of us go to multiple doctors for one reason or another. There are very few people who just see one doctor. You see one doctor for one purpose, and you see another doctor for another purpose. And what she's been seeing Planned Parenthood for has been prenatal care, which they specialize in with physical exams, vaccinations, and counseling and the like. I can't help but feeling that we're trying to make everything going to extraordinary lengths to make everything about abortion one way or another. And I deeply respect the pro-life perspective is a very humane perspective. But this has never struck me as a case about abortion. It has struck me as a case where the intent of Congress to provide the less fortunate citizens among us adequate medical care. And that seems to me apart from the question of abortion because if a Planned Parenthood clinic is in the business of providing abortions, it would be subject to a fund cutoff. And I just don't see this. I realize that we're trying to make this and that and everything about abortion, but I don't see it as a question about abortion. I think it's, I see it as what Congress has provided, a right to Medicaid recipients who are in less fortunate circumstances than many of us are. I can choose my doctor. I can choose my health care provider, but many people can't. And Congress has sought to give those people a right of choice, not on matters of childbearing or abortion, but a right of choice in terms of seeking the provider that they believe will help them the most. And to put the less fortunate among us on a more equal plane to the most fortunate who all of us, maybe many of us have nice health insurance plans and we have the choice of the best medical providers and the rest and Congress has sought to even those scales. And that's that's kind of the way I looked at it. I mean, I looked at it that way before and I haven't changed my mind one whit, but would you care to comment on that? Sure. We think the court is exactly right. This case has nothing to do with abortion. The district court made a factual finding that no state money will be spent on abortion as a result of anything that happens in this case. And there's particular care that Ms. Edwards sought because she has some pretty difficult underlying conditions with diabetes and Planned Parenthood was willing to give her that care. And she was she was happy with the way that she was treated. And we think that this court really did a careful and thorough job the last time around in considering this question. The Supreme Court has said, don't go around implying private rights of action in federal statutes willy-nilly. You've got to look to make sure the statute is unambiguous and look at our precedence. And that's exactly what this court did in a really thorough opinion. And we appreciate the fact that the court recognized that, you know, not every statute can have a private right of action. But the court said that this statute was unambiguous and unmistakably clear. One thing that concerns me is that there's statements made in the brief that just do not accurately, in appellate's brief, that do not accurately reflect what this court did. And they said, oh, you didn't discuss the Gonzaga case at all. We did discuss the Gonzaga case, and we said that a private cause of action is not generally implied, but that it was clear here under Gonzaga. We did address that case frontally, and yet we are told by appellant somehow that we did not. And that that I find troubling, to say the least. Right. I mean, the arguments that the state is pressing now are arguments that the court considered last time around. And, you know, whether it's law of the circuit, which is just binding, or law of the case, law of the case is nowhere near as flexible as the state is suggesting in order to come to a new conclusion. The court would have to find that the decision was so long that it stinks like a five-week-old unrefrigerated dead fish. And that's just not a fair suggestion or representation about the court's very thorough decision, which just faithfully did consider the Supreme Court's precedents. You know, everything that the Fifth Circuit considered in terms of Supreme Court precedents, this court considered last time around. And so we don't think there's just any reason to revisit that decision. I'm happy to answer any further questions if the court has them, but it seems that perhaps there are not any. So I would just urge this court to affirm. Thank you. Judge Wynn, do you have any questions? I do not, Judge. Judge Richardson, do you have some questions? Nothing further. All right. Mr. Birch? Thank you, Judge Wilkinson. I want to start with Judge Richardson's comment, which I think is exactly right. When you're talking about the same case and a subsequent appeal with the same panel, it's akin to rehearing. And I now want to make the case to you why you should rehear this case. The U.S. Supreme Court's decision in O'Bannon- Let me ask this question. Do you think it was required that this case come back to this panel? You know, I don't know the circuit assignment rules well enough to be able to answer that question, Judge Wynn. If we were- You seem to assume that a panel once constituted keeps the same case even after we remand it for either even preliminary injunction or whatever, and it comes back. You seem to assume, I mean, what if one of us took senior status or retired, one of us decided that we were going to do something else and someone else sat in our stead? It would be a different panel. Would it be the law of the case then? Then it would be the law of the circuit. Different panel in the same case. So let me make sure you're saying it is only because the three judge has constituted remain on the same panel that is the law of the case. But if one of us is not on this panel and another judge was up here, it would not be the law of the case. Well, let me be precise about this. Let me hear the answer to that question. Is that true or not? This court has not definitively answered that question. The best authority that I have- I want you to answer it in light of what you are in here today. Is that what you are saying? I'm trying to answer it that- John, Mr. Birch, I want you to answer my question. And it's a very simple question. It's not a tricky question at all as to what you contend is what constitutes this panel. And I'm saying these are the same three judges that sent it back and it came back. I first asked, do you think that was required? And you say you didn't know and I accept that. And then I said, well, what if one judge was not on this panel and you had two or two judges were not on this panel and it came back to it? Would that be the law of the case? In other words, is that a panel that is bound by law of the case? Judge Wynn, it's not clear. This court hasn't said the best authority that I have is Cooper's Federal Practice and Procedure. We cite this on page nine of our reply brief, but note four, and it says that even in that instance, law of the case rather than law of the circuit would still apply. So let me follow up then. So it doesn't have to be the three judges here. It just has to come back to a panel. It's not the constitution of the panel, it's the fact that it comes back to a panel. Is that? Well, as I said, this circuit has not addressed the context where you have different panel saying. Well, I think it's an important question. I think it's an important question because if for what you are arguing, what you are arguing is that law of case exists in this case, and I'm trying to determine what panel, and it didn't necessarily have to be this panel, it just happened to be this one, or the court could decide, okay, by judicial efficiency, we'll do it that way. I think that's the way it's done. It may have been just an efficiency thing, but not required. So another panel totally different from this could have heard it or constituted with any one or two of us could have decided. And my question is with those permutations, which one of those qualifies as panel for which this would constitute law of the case? Under the best authority that either party has cited, it's law of the case as long as it's the same case that a subsequent appeal. But the easy instance is when you have circumstances like these, where you do have an identical panel. But the same case in a subsequent appeal before what? Before if you had a panel or because what you just, if you're going to cut it off there, if you don't add the word panel into that seems to have something important in your argument. Yes, different panel. Back to the same panel. Okay, so if it's not the same panel that is identical in every aspect, that is one judge is different, then it's not law of case under your argument. Is that correct? Under federal practice and procedure that the Cooper Treatise that I just cited, which is the best authority that either side has cited, even if it's a different panel in the same case, law of the case. I'll just say, I've sat in on a lot of cases and I have not seen in some time as bald and frontal attempt as this one is to unwind circuit precedent in a way that could only be destabilizing. And you can, we can, we can dance the angels on the head of the pen all day long. But what is at bottom here is you don't like the opinion of the court. You want to have a petition for rehearing, you've taken it up to the Supreme Court. But I haven't seen a case where somebody just refuses to accept circuit precedent, tries to unwind it and do so in a way that would raise all kinds of questions about this and exceptions to that, and would send litigants into a sea of indeterminacy, being unable to decide what the law of the circuit is and what they can rely on. And what, you know, what, it all comes down at the bottom. You don't like the case, you want to get rid of it, but you can't do it this way. And the damage that your view would inflict upon circuit precedent is rather significant. And it is not, this is, a case where normally a panel, a federal panel would defer to the state's decision to disqualify a health care provider. And the fact that there's, it's questioned here, does it mean that a federal court would be any less deferential to the state's decision under great variety of circumstances? But what you brought here was a case again involving the disqualification of this provider that had been in the business of providing prenatal care for disqualified. And there would have been no, there's been no medical challenge to the fact that this provider was able to perform the services that was requested of it. And that's just, it's just bald. And you want some, you want a provider disqualified in the face of this statute that has not been proven to be disqualified for the services that it has provided low-income people for many, many years. And you want to do that by destabilizing the precedent of this court. And that's part of the problem, part of it, that I have with the OPA. Always good against the last, last word. So you have the last word here, sir. Thank you. Your Honor, we're not trying to destabilize circuit precedent. If you read the Kauffman decision and you think that it's right, all I'm saying is you have the power to fix a mistake. If you think that Kauffman was wrong and you got it right first time, it's entirely within your power, obviously, to issue the same opinion. But as for the question of disqualification, there is a remedy when a provider is disqualified, and that's to go through the state administrative proceedings and then judicial review. The Medicaid Act says that, South Carolina law says that, South Carolina regulations say that. There is a remedy for disqualification, but it doesn't belong to Ms. Edwards. Judge Wilkinson, with your indulgence, can I ask one final question? Absolutely. Thank you. Ms. Wirth, I'm having a little trouble thinking about the mootness argument that you've raised. Because on the one hand, I find it somewhat compelling. On the other hand, it's obviously based on no evidence at all, right? So you made a representation, and this is not in any way impugning you, obviously. But you made a representation that is inconsistent, I think, or undermines the alleged intent of the plaintiff. The problem is the plaintiff's intent are all in affidavits, and there's evidence of it, and we can rely on that evidence or not. We have a little hard time, I think, relying on your take judicial notice off for obvious reasons. So what would you have us do, given that sort of predicament? Thanks for raising that, Judge Richardson. The way to think about this is that it's the plaintiff's burden of proof to demonstrate that they have continuing standing at every stage of the case. For there to be Article III jurisdiction, the plaintiff needs to prove standing, not only at the outset, but all the way through to final December. Ms. Edwards still does not say that she's attended an appointment at Planned Parenthood South Atlantic since 2018, only that she contacted them in July to schedule one. And if she actually had attended a visit... Let me follow up with Judge Richardson's question. It's one thing. It's really, I think you're correct, standing is required. The question is, how do you come about it? And in this instance, I mean, it's fair to say she hasn't said she's been back there the whole bit, but what you did was you disclosed non-public information about her medical, sensitive medical information. And you did it without even consulting the other side. And I don't know how far that goes because, I mean, how much more would you disclose? I mean, and it's coming from you. There's a way in which you get evidence and you disclose this information. She hasn't gone back for three years without even checking with her. And this is fairly sensitive medical information that you're putting forth. It's one thing to say, well, she hasn't said she's gone back, or we don't know what her intentions are. And she's going, as Judge Wilkinson has alluded, for this care and this healthcare that she's been going there. We cannot look at this in a vacuum. Everybody on this call and I mean, that is something we know, COVID has devastated this country. There are people, this court itself, we haven't sat for one time in the last two years. Does that mean we're not constituted as a court that will do oral arguments over two years because we didn't do it? We certainly had the intention to do it every time it came around. We had the intention to do it in the future. We don't know if we'll sit. But this COVID virus has really changed the world. And I think that as we continue to look at this, it really comes down to this. You're just talking about poor people and people who cannot afford to do things. It's really all it's about. I don't care how you put it. People with money and means would not be in this court talking about Planned Parenthood, whether they wanted abortion or whether they wanted reproductive services or not. And it seems as though these increasingly these efforts are really going after poor, underprivileged, those who don't have the least of them, constantly looking at their records. Did you in fact go to this place? And if you didn't, and we got this, we showed the Medicaid payments and stuff, you didn't go. And we put it out in the public, just like that. Is you think that's a good policy or even the correct way things should proceed here? Well, Judge Wynne, it is not the state's intent to persecute anybody, no matter their economic needs. They're trying to enforce state law, which says that no state- I'm not speaking to the intent. I'm not impugning your intent and what you're doing. You're doing your job. And I understand that. I'm telling you what has happened as a matter of fact, that is what's going on here. We are dealing with poor, underprivileged people. And in this COVID all over the place. And she's trying to get the proper care. She's been everywhere trying to, she finally went to a place that treated her with respect. And she said, I'm going to use this place and it's my intention to go. But the government is there looking at her at every instance, not to help, not to help her get help, but to do everything you can to keep her from exercising this opportunity. And then you disclose it to the world. Well, we can show she hasn't even been there for the last three years or so without even asking or seeing or checking or finding a reason or anything. Does that sound like the right way to do this kind of thing? Judge Wynne, three quick points in response to that. First, when Ms. Edwards received her Medicaid card, she also received a HIPAA disclosure that told her that her medical information could be used in a legal proceeding. And so there was nothing untoward about the state using that information. And it didn't disclose anything sensitive. It didn't say what treatments she had or what illnesses she had. It simply said she hasn't been there. The second point is that it's her duty to prove, as she alleged in her complaint, that she would attend her annual exam. Just in waiving HIPAA rights, those who are poor and have no means, they don't have any rights to information. Judge Wynne, that's not what I'm saying. Well, I mean, that's what you're going with. You're going, basically, she doesn't have any rights. She signed them away. So she's not like everybody else with money up there that can go places because, you know, she's poor. She doesn't get to come and tell us we can't tell this information. You want to go further with this? We can continue the dialogue on it if you want to go further on it because I think you're going somewhere with this. And it's interesting to me where you are when you are moving this case. Can I hear points two and three and then go back to this? Thank you, Judge Richardson. The second point is that it's her burden of proof to show that she's satisfied the allegation in her complaint. And so it's not our burden to disprove it. She has to prove that she's continued to go for her well exams annually. The third point is, it's not that she doesn't have the right to go to Planned Parenthood. It's that she doesn't have the right to challenge a disqualification determination. Planned Parenthood had a real remedy, with due process, that it could have pursued in state court. In addition, it had a practical remedy. Planned Parenthood could choose to give up performing abortions. And if it did that, then it could accommodate Ms. Edwards and any other Medicaid patient in the state. But it's Planned Parenthood's choice to go ahead with abortion services that caused it to be disqualified. It was Planned Parenthood's choice not to avail itself of the administrative procedure that was made available. So your contention in this case is all about abortions? No. My contention is that Congress did not create a private right in 1396 AA23A, but instead set up a scheme. Which is a very question we've decided. But I do not want Judge Richardson's questions to be cut off in any way. Good. Thank you very much. I appreciate your allowing me to continue for a minute, but I'm fully satisfied, Judge. Thank you. All right. Let me mention one thing to you, Mr. Birch, and that is, the point has been brought up that, well, the last visit was in 2018. And she didn't come in 2019 or 2020. And the pandemic didn't hit until March or whatever of 2020. But there have been many, many times when I have not gone to a doctor for two or three years, irrespective of the pandemic. But I always wanted to know that that provider was there. Just to take the case of a colonoscopy. Guidelines recommend that you receive one every five years under some circumstances, or more frequent, or 10 years under other circumstances. And many other specialists are like that. We don't consult them every year or every two years. But when circumstances arise, and we need to consult them, it's important that they be there. And especially if we've had some experience with them. And although I might not need to talk to my eye doctor or my gastroenterologist or whatever for several years in the future, I would consider myself injured in fact, if they were taken off an eligibility list. It's important that they be there when you need them. And it's important for Ms. Edwards, for this to be there when she needs it. And there's one thing I would just, and it's more in the sense of a reflection than anything else. But I began this question about just how much I respect the underlying humanity of the pro-life point of view. And I'm very sympathetic to it. But wouldn't it be equally humane to just want the maximum chances to bring healthy babies and healthy children into this world and to take advantage of prenatal care that might be provided for folks who sought not an abortion, but a healthy baby. That's what, as I can best tell, Ms. Edwards might one day want. And in the interim, she wants the care that it would provide. And so, you have a very humane perspective in your views on abortion, but there's also another humane perspective that is at issue here. And that, as I've said, is the right of our less fortunate citizens to have some access to decent health care on the medical problems that mean most to them. And I don't understand why we're going to such lengths to close that off in the face of what I regard as Congress's contrary expression of intention. And that is just something maybe down the road that you want to think about. And that is that humanity lies in bringing healthy children into this world. And that's what Ms. Edwards is trying to do. So, again, I give you the last word, sir. Thank you. In closing, Judge Wilkinson, making sure that every baby is born and gets to experience life is precisely why South Carolina adopted the policy that resulted in the disqualification decision here. And if that disqualification decision was contrary to the will of Congress, Planned Parenthood had a remedy in the state administrative process and a judicial review of that administrative proceeding. It does not have a right to a federal court action. Thank you. We're talking about not Planned Parenthood's right to a remedy, but we're talking about Ms. Edwards' right to a remedy. But at any rate, I'm going to ask my co-panelists if they have further questions of you. Judge Richardson has no further questions. Judge Wynn, do you have further questions? No further questions, Your Honor. All right. I want to thank both of you very much for being here. We appreciate your argument so much. And we'll now move into our next case.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Julius N. Richardson